**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | | |
|---|---|---|
| **KAREN R. TRIMMER,** | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL NO. 3:10CV639 |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Karen R. Trimmer, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Social Security Disability ("DIB") payments. The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 7) and motion to remand (docket no. 8) be GRANTED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

1

Defendant's motion for summary judgment (docket no. 11) be DENIED; and that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings in accordance with this report and recommendation.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 8, 2006, claiming disability due to fibromyalgia, hypertensive cardiovascular disease, diabetes, and pulmonary disorders, with an alleged onset date of October 4, 2006. (R. at 96-97, 108, 111.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 56-60; 63-67.) On November 21, 2008, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 21-49.) On January 21, 2009, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act where, based on her age, education, work experience and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 11-20.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

2

### III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to

determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[3] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R. § 404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[4] based on an assessment of the claimant's residual functional capacity ("RFC")[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 13.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of thrombophlebitis with a history of deep venous thrombosis, chronic obstructive pulmonary disease ("COPD"), obesity, cardiac arrhythmia, obstructive sleep apnea, diabetes mellitus, anxiety, and fibromyalgia, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 13-16.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, except that she required a sit/stand option and an air-controlled environment. (R. at 16-18.) The ALJ also limited Plaintiff to occasional crouching, kneeling, stooping, and crawling; and simple, routine tasks. (R. at 16-18.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work because of the levels of exertion required in each position. (R. at 18.) At step five, after considering Plaintiff's age, education, work experience and RFC, and after consulting a VE, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 19.) Specifically, the ALJ found that Plaintiff could work as a charge account clerk, a food and beverage order clerk, or a

surveillance system monitor. (R. at 19.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 20.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ improperly discounted the opinions of Plaintiff's treating physician; and (2) the ALJ failed to conduct a proper credibility analysis. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 16-22.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 14-26.)

### A. The ALJ did not properly evaluate Plaintiff's treating physician's opinions.

Plaintiff contends that there was no legal basis for according the opinions of Dr. Campbell less than controlling weight. (Pl.'s Mem. at 17.) Plaintiff asserts that Dr. Campbell's opinions were supported by the medical record, and that the ALJ erroneously placed too much emphasis on examination results which had little to no bearing on Plaintiff's main impairments. (Pl.'s Mem. at 18-19.) Assuming Dr. Campbell's opinions were not entitled to controlling weight, however, Plaintiff argues that the ALJ could not properly reject the opinions altogether because there was no persuasive evidence to the contrary. (Pl.'s Mem. at 19.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence

resulting from consultative examinations or medical expert evaluation that have been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.927(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

In assessing the medical opinions of Dr. Campbell, the ALJ noted that the opinions were not well-supported. (R. at 18.) The ALJ assigned Dr. Campbell's opinions "very little weight" because they were inconsistent with treatment notes, the opinions of other examining physicians, and Plaintiff's own statements regarding her daily activities. (R. at 18.) With regard to Plaintiff's alleged rheumatoid arthritis, the ALJ noted that although Dr. Campbell completed an arthritis questionnaire, he did not list arthritis as one of Plaintiff's diagnoses. (R. at 18.) Further,

the ALJ noted that another examining physician, Dr. Kondragunta, stated that he did not see any history of rheumatoid arthritis in Dr. Campbell's dictation. (R. at 18.) As support for his statement that the restrictions assigned by Dr. Campbell were not supported by the medical record, the ALJ noted that in "March 2007 and July 2007, Dr. Campbell noted that a neurological exam was grossly normal." (R. at 18.)

The ALJ's conclusions regarding Dr. Campbell's opinions, as written, cannot withstand review. Though the Court notes that many of Dr. Campbell's opinions appear to be unsubstantiated, and therefore not entitled to controlling or even substantial weight, the ALJ has not sufficiently articulated his reasons for what appears to be a blanket rejection of Dr. Campbell's opinions as a whole. There is no question that the ALJ properly disregarded Dr. Campbell's conclusory statements that Plaintiff was "completely and totally incapacitated," incapable of performing any work, and "totally disabled," as speculation as to employability carries no valuable probative weight. (R. at 338-45, 478-79, 572-80, 601-08.) 20 C.F.R. § 404.1527(e); see SSR 96-5p. The ultimate determination of disability is specifically reserved to the Commissioner. Id. However, when a physician offers specific restrictions or limitations, as Dr. Campbell has done, the ALJ must provide reasons for accepting or rejecting such opinions. It does not appear that the ALJ has done so in this case.

In this case, the ALJ's finding that Dr. Campbell's opinions were inconsistent with the other evidence of record does not appear to be entirely accurate. It also appears that the ALJ did, as Plaintiff asserts, misplace emphasis on her "grossly normal" neurological examinations. As Plaintiff noted, her primary impairments are not neurological in nature. Though Defendant asserts that Plaintiff's neurological examinations are relevant because of her alleged problems

with reflex changes, the Court is not persuaded that such constitutes substantial evidence supporting the ALJ's decision. Nor is the Court persuaded by Defendant's argument that Dr. Campbell's opinions are contradicted by evidence of a normal gait, no motor deficits, 5/5 strength in her extremities, no edema, and no on-going range-of-motion ("ROM") testing.[6] (Def.'s Mem. at 22.) The Court notes that Dr. Campbell did not appear to conduct ROM testing; however, treatment notes do reflect that Plaintiff experienced significant pain, as well as occasional edema. (R. at 191-95, 445, 447, 480-81, 518, 560.) Notably, on July 21, 2006, before Plaintiff's onset date, treatment notes indicate that flexion/extension of Plaintiff's upper and lower extremities caused significant skeletal tenderness and pain. (R. at 191-95.) Treatment notes from November 11, 2007 indicated that Plaintiff's ROM was painful with limited flexion/extension. (R. at 480-81.) It is therefore not prudent to accept the ALJ's dismissal of Dr. Campbell's opinions without a more thorough explanation.

The Court also notes that the ALJ's dismissal of Plaintiff's alleged arthritis may be problematic. The ALJ simply noted that Dr. Campbell completed a rheumatoid arthritis questionnaire but did not even list rheumatoid arthritis as a diagnosis, and that another physician noted that he did not see any history of arthritis in Dr. Campbell's dictation. (R. at 17-18, 527.) However, as Plaintiff notes, the ALJ did not mention that the physician who noted Dr. Campbell's omission also noted that Plaintiff's past medical history was "significant for rheumatoid arthritis" and that her severe anemia was most likely a result of her rheumatoid arthritis or an infection from her wounds. (R. at 527-28.) It is true that Dr. Campbell completed

---

[6] The Court also notes that the justifications presented by Defendant were not articulated by the ALJ in his dismissal of Dr. Campbell's opinions. The ALJ only stated that a neurological examination was grossly normal, and did not provide any other specific evidence refuting Dr. Campbell's opinions.

a rheumatoid arthritis questionnaire on April 16, 2008, yet failed to list such as a diagnosis, but Dr. Campbell referenced arthritis on other occasions in October 2006 and June 2007. (R. at 240-43, 492, 528, 533.) Considering the multiple references to arthritis, it is not fair to dismiss the diagnosis entirely because Dr. Campbell failed to list it in an April 2008 questionnaire. However, the Court is also mindful of the fact that there do not appear to be any laboratory tests supporting a diagnosis of rheumatoid arthritis. Nevertheless, whether or not Plaintiff suffers from the impairment is not an appropriate inquiry for the Court to resolve. Instead, on remand the ALJ should clearly articulate his findings on the matter, so that a reviewing court can discern his reasoning for the conclusions he draws.

      The ALJ also found Plaintiff's clear chest x-rays significant in discounting Dr. Campbell's opinions. However, as Plaintiff notes, such x-rays have no bearing on Plaintiff's musculoskeletal pain or deep vein thrombosis, which appear to be her primary issues that allegedly preclude her from working. Based solely on the ALJ's articulation, or lack thereof, for his reasoning, the Court cannot conclude that clear chest x-rays and normal neurological examinations constitute substantial evidence to justify the ALJ's conclusions.

      The Court also finds it problematic that the ALJ assigned significant weight to the state agency physicians' opinions that Plaintiff was capable of performing work. The ALJ noted that their conclusions were consistent with the medical record. (R. at 18.) However, while the ALJ found that Plaintiff was limited to sedentary work, it appears that the state physicians opined that Plaintiff was capable of performing more than sedentary work. (R. at 18, 410-16, 466-72.) Indeed, the ALJ did not adopt many of the functional limitations suggested by state physicians in Plaintiff's RFC. For example, state physicians opined that Plaintiff could occasionally lift and

11

carry up to twenty pounds, yet sedentary work limits a claimant to lifting no more than ten pounds at any time. (R. at 411; 20 C.F.R. § 404.1567(a).) Also, state physicians opined that Plaintiff could stand/walk for about six hours in an eight-hour workday, which is consistent with light work. (R. at 411.) However, in limiting Plaintiff to sedentary work, the ALJ limited Plaintiff to walking and standing for only two hours in an eight-hour day. SSR 96-9p. State physicians found that Plaintiff could frequently balance, stoop, kneel, crouch, and crawl, yet the ALJ limited Plaintiff to performing such movements only occasionally. (R. at 16, 412.) It appears that the ALJ may have credited some of the limitations suggested by Dr. Campbell; however, as noted, Dr. Campbell's opinions were credited "very little weight." The Court simply cannot discern how the ALJ arrived at a RFC determination that appears to be a "splitting of the baby" between state physicians who opined that Plaintiff could perform more than sedentary work, and Dr. Campbell who opined that Plaintiff could not perform any work at all.

This is not to say that an ALJ must adopt an opinion in its entirety in determining a claimaint's RFC. Nor is the Court implying that an ALJ is not entitled to adopt only certain aspects of several different opinions in arriving at his ultimate determination. The Court simply notes that an ALJ should make clear how he has arrived at his RFC conclusions.

Further, the Court is not necessarily of the opinion that Dr. Campbell's opinions should be given controlling, or even substantial, weight in their entirety. Certain opinions seem to be far-reaching, such as Dr. Campbell's assertions that Plaintiff has "all bad days" and that Plaintiff would be absent from work "all the time." (R. at 338-45, 533-39.) Plaintiff's own statements are contrary to such allegations. (R. at 37.) Again, however, it is not appropriate for the Court to insert its own judgment on this matter. Rather, the ALJ on remand must sufficiently articulate

12

his findings and provide substantial evidence for accepting or rejecting Dr. Campbell's opinions. Accordingly, the Court recommends that the case be remanded for further review of Dr. Campbell's and the state agency physicians' opinions.

### B. Credibility.

Although the Court recommends that Plaintiff's first argument constitutes a valid basis for remand, the Court will also briefly address Plaintiff's claim that the ALJ improperly assessed her credibility. Plaintiff contends that the ALJ's reliance on her daily activities was inappropriate, as the ability to engage in some daily activities is not inconsistent with allegations of disability. (Pl.'s Mem. at 19-21.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a). The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. Id.; SSR 96-7p, at 1-3. The ALJ must consider all the medical evidence in the record. Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part

of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit (as the immediate controlling appellate authority for this Court) has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

In this case, the ALJ found that Plaintiff's impairments could reasonably be expected to

14

cause her alleged symptoms, but that her claims regarding the intensity, persistence, and limiting effects of such symptoms were not entirely credible. (R. at 17.) In making this finding, the ALJ noted that Plaintiff's allegations were not necessarily consistent with her medical history, her written statements, or her testimony. (R. at 17.) Given this Court's recommendation that the ALJ has not properly evaluated the opinion evidence, and it appears that the ALJ has relied on much of the same evidence that was problematic to that issue, the Court recommends that the ALJ re-evaluate Plaintiff's credibility in light of this opinion.

However, that being said, the Court does not agree that the ALJ's reliance on Plaintiff's report of her daily activities was inappropriate. As Defendant notes, the ALJ is required to assess a claimant's daily activities in his credibility analysis. (Def.'s Mem. at 25.) Also, the ALJ did not rely solely on Plaintiff's daily activities in finding her not entirely credible, as Plaintiff seems to suggest. The ALJ also considered Plaintiff's medical history and the opinions of record. Further, the ALJ did not entirely disregard Plaintiff's allegations of disability. For example, the ALJ allowed for a sit/stand option in the RFC, which was not accounted for in the state agency physicians' opinions. Such a limitation suggests that the ALJ took into account Plaintiff's statements that she could only sit or stand for thirty minutes at a time. (R. at 17-18, 31, 36.) Though it is clear that Plaintiff does not agree with the ALJ's finding that she is not entirely credible, this does not mean that the ALJ performed a legally erroneous credibility analysis. Had the ALJ properly articulated his findings regarding the medical and opinion evidence, his credibility analysis could arguably be sufficient. However, because the ALJ did not, it is recommended that on remand the ALJ should revisit his credibility analysis in light of the findings he makes regarding the opinion evidence.

## V.  CONCLUSION

Although the Court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Plaintiff is not disabled, the Court is unable at the same time to recommend an outright award of benefits.  The Court cannot make a finding on Plaintiff's credibility, as that is more properly assessed initially on the administrative level.  The Court is mindful of the prolonged period of time that the matter has been pending and, therefore, if remanded, it is recommended that the ALJ expedite the process by reconsidering Plaintiff's application in light of this report, and that a final administrative decision be issued in which all findings are sufficiently articulated and substantiated, including any credibility determinations, as would be sufficient for possible judicial review.

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 7) and motion to remand (docket no. 8) be GRANTED; that Defendant's motion for summary judgment (docket no. 11) be DENIED; and, that the final decision of the Commissioner be REVERSED and REMANDED for further administrative proceedings consistent with this report and recommendation.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                                                           _____/s/_____
                                                                                             DENNIS W. DOHNAL
                                                                                             UNITED STATES MAGISTRATE JUDGE

Date: September 7, 2011
Richmond, Virginia